39 F.3d 936
 John ALLEN, Plaintiff-Appellee,
v.
CITY & COUNTY OF HONOLULU, Defendant,
and
Robert Johnson, Sgt.; Richard Salgado, Sgt.; John
Rodrigues, Jr., A.C.O.; A.C.O. Friedl; A.C.O.
Ramseyer; Dane Griffin, A.C.O.,
Defendants-Appellants.
 No. 93-16802.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Oct. 3, 1994.*
Decided Oct. 28, 1994.
 
 Thomas D. Farrell, Deputy Atty. Gen., Honolulu, HI, for defendants-appellants.
 No appearance for plaintiff-appellee.
 Appeal from the United States District Court for the District of Hawai'i.
 Before: FLETCHER and FERNANDEZ, Circuit Judges, and John W. SEDWICK,** District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Sergeant Salgado a defendant in a 42 U.S.C. Sec. 1983 suit against him and others, brings an interlocutory appeal to challenge the denial of summary judgment on his claim of qualified immunity. We affirm.
 
 I.
 
 2
 John Allen, proceeding pro se, claims that Sergeant Richard Salgado, the senior uniformed officer at the Special Holding Unit of the Halawa Medium Security Facility, subjected him to cruel and unusual punishment under the Eighth Amendment by failing to escort him to the recreation area for outdoor exercise outside of regularly scheduled hours on days when the law library's schedule conflicted with the recreation area's.
 
 
 3
 Allen was sentenced to two consecutive sixty-day sentences in disciplinary segregation in the Special Holding Unit of the Halawa Medium Security Facility (HMSF) after assaulting a corrections officer with a weapon. After completing his disciplinary sentences, he remained in SHU as part of the Phase I program.[1] The timing of his return to the general prison population was uncertain, being dependent on prison authorities' perception of his behavior. As an inmate in SHU, Allen could use the law library and outdoor recreation area only during limited hours and had to be escorted from one area to the other by a prison guard. Prison officials sometimes scheduled an inmate's opportunity for outdoor recreation at a time that overlapped or coincided with his opportunity to use the law library. Although guards would sometimes escort an inmate to the recreation area after he used the library, Allen claims that he frequently was forced to forego outdoor recreation on days when he used the prison's law library.
 
 
 4
 Allen filed a section 1983 action, claiming that Salgado among others had violated his Eighth Amendment right to freedom from cruel and unusual punishment by denying him outdoor recreation.[2] Salgado moved for summary judgment on the grounds that he was entitled to qualified immunity because he had not violated "clearly established" federal law. For purposes of the motion, Salgado did not dispute Allen's allegation that HMSF previously had a practice of forcing inmates to choose between attending the law library and the recreation area.[3]
 
 
 5
 The magistrate recommended that Salgado's motion for summary judgment be denied, and the district court adopted the magistrate's recommendation.
 
 
 6
 Salgado filed a second motion renewing his request for dismissal on qualified immunity grounds. For the first time, he disputed the claim that Allen was forced to choose between the library and the recreation area. The magistrate once again recommended that Salgado's motion for summary judgment be denied, and the district court adopted the magistrate's recommendation. Salgado filed a timely appeal of the district court's order.[4]
 
 II.
 
 7
 Allen alleges that, during his confinement at SHU, Sergeant Salgado violated his right to freedom from cruel and unusual punishment by forcing him to choose between using the law library and exercising in the outdoor recreation area. The sole issue on appeal is whether, at the summary judgment stage, the district court should have held that Salgado enjoys qualified immunity from liability as a state official performing a discretionary function. Although a denial of summary judgment generally is not a "final order" over which this court has jurisdiction pursuant to 28 U.S.C. Sec. 1291, a pretrial ruling denying summary judgment on the grounds of qualified immunity is appealable under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); see generally Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We review de novo. Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993).
 
 
 8
 As a prison official performing a discretionary function, Salgado is protected from liability for civil damages only "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Although the standard " 'gives ample room for mistaken judgments,' " Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986)), it does not shield a defendant from liability when the illegality of his conduct should have been apparent in light of pre-existing law. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); Mitchell v. Forsyth, 472 U.S. at 535, 105 S.Ct. at 2820. To defeat Salgado's claim of qualified immunity, Allen was required to show that the contours of his right to outdoor exercise were "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." Anderson, 483 U.S. at 640, 107 S.Ct. at 3039.
 
 
 9
 The Supreme Court had clearly established an inmate's right of access to a law library well before the time covered by Allen's complaint. See Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (right of access to the courts is "fundamental" and requires prison officials to provide inmates "with adequate law libraries or adequate assistance from persons trained in the law"). Similarly, several courts, including this one, had held that a deprival of outdoor exercise to prisoners incarcerated for long periods and under highly restrictive conditions of confinement constituted cruel and unusual punishment. Spain v. Procunier, 600 F.2d 189 (9th Cir.1979); Davenport v. DeRobertis, 844 F.2d 1310, 1314-15 (7th Cir.), cert. denied, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); Ruiz v. Estelle, 679 F.2d 1115, 1151-52, vacated in part as moot, 688 F.2d 266 (5th Cir.1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Campbell v. Cauthron, 623 F.2d 503, 507 (8th Cir.1980). Salgado is not entitled to qualified immunity simply because Allen cannot produce a case stating that an inmate is entitled to both his constitutional right to use the law library and his right to have outdoor exercise. See Ostlund v. Bobb, 825 F.2d 1371, 1374 (9th Cir.1987) (to show that right was clearly established, plaintiff need not produce a case directly on point), cert. denied, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988).
 
 
 10
 In Spain, this court held that a prison's policy of not affording outdoor recreation violated the Eighth Amendment. 600 F.2d at 199 (upholding district court's order that prison officials provide at least one hour of outside recreation per day, five days a week). Although the court in Spain declined to decide whether deprivation of outdoor exercise was a "per se violation" of the Constitution, the court recognized that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates." Id. at 199. The court emphasized that the plaintiffs were in long-term incarceration where they were in continuous segregation, generally spending twenty-four hours each day in their cells alone. Id. Under these conditions, deprival of outdoor exercise constituted cruel and unusual punishment. Id.; see also Toussaint v. Yockey, 722 F.2d 1490, 1493 (9th Cir.1984) ("substantial constitutional question" raised when prison officials failed to provide sufficient exercise to inmates assigned to administrative segregation for over one year).
 
 
 11
 After four months of segregation for disciplinary infractions, Allen continued to be held, as a Phase I inmate, under highly restrictive conditions of confinement on an open-ended and potentially long-term basis. Like the plaintiffs in Spain, inmates in SHU generally are confined to their cell unless they visit the law library, recreation area, or infirmary. Although they may talk to other inmates through the cell walls, they have limited physical contact with other inmates. Given the highly restrictive conditions of confinement and the indeterminate length of incarceration under these conditions, a reasonable prison official should have known that Spain required him to provide Allen with regular outdoor exercise.
 
 
 12
 Salgado has offered no justification for his failure to afford Allen with both use of the law library and regular outdoor exercise. Cf. LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir.1993) (upholding denial of exercise rights to inmate who had attacked prison guards in exercise yard and vowed to attack them again); Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir.1980) (upholding month-long deprival of outdoor exercise during "lockdown" issued in response to a "genuine emergency"), cert. denied, 451 U.S. 937, 101 S.Ct. 2015, 68 L.Ed.2d 323 (1981).
 
 
 13
 Instead, Salgado attempts to distinguish Spain on the grounds that HMSF does not have a broad policy of denying outdoor recreation to all SHU inmates on a daily basis. Salgado maintains that it is constitutionally sufficient that Allen had at least six hours per week outside his cell and could choose whether to spend the time in the recreation area or in the law library.[5] However, the district court noted correctly that Allen's Fourteenth Amendment right to court access and his Eighth Amendment right to outdoor exercise are not "either/or" rights. An inmate should not have to forego outdoor recreation to which he would otherwise be entitled simply because he exercises his clearly established constitutional right of access to the courts. See Bounds, 430 U.S. at 828, 97 S.Ct. at 1498 (right of access to the courts is "fundamental" and requires prison officials to provide prisoners with law libraries).
 
 
 14
 Although we recognize that exceptional circumstances sometimes may necessitate that an inmate make difficult choices between using the law library and pursuing other activities, an inmate cannot be forced to sacrifice one constitutionally protected right solely because another is respected. Whether HMSF had a policy of forcing inmates to choose between outdoor exercise and library use, whether and how frequently Allen himself was faced with this choice, and whether forcing such a choice on him was justified under the circumstances are factual issues to be developed at trial.
 
 
 15
 During the time Allen was incarcerated in SHU, an inmate's right to outdoor exercise and his right to law library access both were clearly established. Since a reasonable prison official should have known that he could not deprive Allen of one simply because he permitted Allen to exercise the other, Salgado is not entitled to qualified immunity at the summary judgment stage. The district court's denial of the motion for summary judgment is affirmed.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 Under the Segregation and Maximum Control Program ("SMCP") in effect at that time, inmates progressed through four phases corresponding to four housing areas of the facility. All new inmates were assigned to "Phase I" and were confined in SHU, where they encountered the harshest conditions of confinement found at HMSF. If they did not commit any violations of prison rules, they advanced to the next phase, where the housing conditions were more tolerable. Inmates who were sentenced to temporary disciplinary segregation for acts of misconduct served their sentences in SHU, then joined Phase I again, continuing their confinement in SHU until they graduated to the next phase through good behavior
 
 
 [2]
 Allen's original complaint included multiple claims against several defendants. The district court dismissed almost all of these claims, but denied defendants' motion for summary judgment on two claims. Only one of these is the subject of this appeal
 
 
 [3]
 Since late 1989, HMSF has instituted procedures to ensure that inmates who use the law library do not miss outdoor recreation. Although this voluntary cessation of allegedly illegal conduct does not render Allen's claim moot, Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 854 (9th Cir.1985), it does render his claim one for damages only
 
 
 [4]
 Allen has not submitted a brief on appeal. We rely on his submissions to the district court
 
 
 [5]
 Salgado further notes that prison officials should not be forced to create an incentive for inmate litigation by providing more time to litigant inmates outside their cell than to non-litigant inmates. The empirical basis for this argument is questionable given that prison officials claim they often accompanied litigant inmates to the recreation area after they went to the library and that HMSF has since adopted procedures to ensure that inmates who use the library may also enjoy the standard amount of recreation time. More importantly, an inmate's right to use the law library is fundamental and will not be viewed by this court as conduct to be discouraged