# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2116

_____

| | | |
|---|---|---|
| Bruce Entzi, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Don Redmann, Ken Sorenson, | * | |
| Kevin Arthaud, Leann K. Bertsch, | * | |
| Brian Deeher, Brenda Ross, Melanie | * | |
| Flynn, Stewart Baumgartner, Clyde | * | |
| St. Claire, Jason Komrosky, Gerald | * | Appeal from the United States |
| Maragos, Patrick Altringer, Virginia | * | District Court for the |
| Kleven, Elaine Little, Tim Schuetzle, | * | District of North Dakota. |
| | * | |
| Defendants/Appellees. | * | |
| | * | |
| Dean McIlroy, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Jeff Wagner, Tammy Hannesson, | * | |
| Renell Henke, Denise Senger, | * | |
| Cathy Jensen, Rick Barman, | * | |
| Patrick Bohn, | * | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: December 15, 2006
Filed: May 4, 2007 (**Corrected 9/17/07**)

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Bruce Entzi appeals the district court's[1] adverse grant of summary judgment and judgment on the pleadings in his civil rights suit. We affirm.

I.

In 1999, a North Dakota jury convicted Entzi of gross sexual imposition, in violation of N.D. Cent. Code § 12.1-20-03(2)(a), for sexual contact with his two daughters. The court sentenced Entzi to a term of ten years' imprisonment, with five of those years suspended, and a term of supervised probation. As a condition of his probation, the court ordered Entzi to undergo sex offender treatment while in prison. On direct review, the North Dakota Supreme Court upheld Entzi's conviction. *State v. Entzi*, 615 N.W.2d 145 (N.D. 2000). On January 22, 2004, Entzi filed an application for state post-conviction relief. The state court dismissed most of Entzi's claims, and Entzi voluntarily withdrew the others. About a month later, Entzi petitioned for a writ of habeas corpus in federal court. The district court dismissed the petition as untimely. He later brought this suit alleging constitutional violations arising from his refusal to participate in the prison's treatment program for sex offenders and from the asserted inadequacy of prison library services.

While in prison, Entzi refused to comply with the state court's order that he report to the "Sex Offender Education Class" as a condition of probation. Because Entzi maintained his innocence, he argued that requiring him to attend the class would compel him to "be a witness against himself" in violation of the Fifth Amendment.

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

The program consisted of two courses of instruction, each designed to rehabilitate convicted sex offenders. The first course was the "education phase," which the Director of the Department of Corrections, Elaine Little, described as a "video and workbook series." The program's second phase required participants "to be honest about their victimization and work to lose their denial." This part of the program required that participants admit guilt to the offense of conviction. Entzi refused to participate in either phase, maintaining his innocence and arguing that because he had testified in his own defense at trial, an admission of guilt could subject him to a prosecution for perjury. Because of Entzi's refusal to attend the court-ordered treatment sessions, prison officials suspended performance-based sentence reductions that would have shortened Entzi's prison term. *See* N.D. Cent. Code 12-54.1-01. Entzi alleges that as a result, his term of imprisonment was extended by over a year.

Several days before Entzi's scheduled release from prison, his probation officer, Patrick Bohn, filed a petition to revoke probation based on Entzi's failure to complete this sex offender treatment. On September 3, 2004, the state trial court dismissed Bohn's petition, because it thought the requirement that Entzi admit his guilt during treatment "violates the 5th Amendment right to be free from self-incrimination" and also "violates common sense." (App. at 60). Entzi subsequently filed a suit for damages against Bohn and a group of prison officials.

II.

Entzi's complaint makes several allegations relating to his imprisonment. He advances only three arguments on appeal. First, Entzi contends that Bohn violated Entzi's privilege against self-incrimination by filing a petition to revoke his probation based on Entzi's failure to complete the treatment program. Second, Entzi argues that prison officials unconstitutionally suspended his right to earn performance-based sentence-reduction credits under North Dakota law because of his refusal to attend the

-3-

sex-offender classes. Third, Entzi argues that the prison officials did not provide sufficient access to the prison's library, and that the library was so inadequate as to deprive Entzi of his right of access to the courts.

## A.

Entzi contends that his probation officer, Bohn, compelled Entzi "to be a witness against himself" by filing the petition to revoke probation. The district court granted Bohn's motion for summary judgment, concluding that Entzi had failed to prove any injury and that absolute immunity shielded Bohn from suit. We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Entzi. *Walker v. Bonenberger*, 438 F.3d 884, 888 (8th Cir. 2006).

Entzi's *pro se* complaint alleges that Bohn violated Entzi's rights under the Due Process Clause by failing to give advance notice of the parole revocation petition. Entzi raised an argument based on the privilege against self-incrimination for the first time in response to the defendants' motions for summary judgment. The district court rejected Entzi's claims against Bohn because it could not "understand how any of this was improper or prejudiced or injured Entzi in any way." (R. Doc. 167, at 28). The court also ruled that absolute immunity barred the suit against Bohn, because bringing a parole revocation petition "is in the nature of a prosecutorial function." (*Id*. at 28) (citing *Figg v. Russell*, 433 F.3d 593, 599 (8th Cir. 2006)).

On appeal, Entzi characterizes his claim against Bohn as involving a violation of the self-incrimination clause, rather than a violation of his right to procedural due process under the Fourteenth Amendment. Entzi contends that the filing of the revocation petition violated his rights under the Fifth Amendment (as incorporated by the Fourteenth), and required him to expend legal fees to defeat the petition in state court. Assuming Entzi's filings in the district court, construed generously, properly bring this Fifth Amendment claim before us, and assuming for the sake of argument

that Bohn is not entitled to absolute immunity for his filing of the petition, *compare Ray v. Pickett*, 734 F.2d 370, 374 (8th Cir. 1984), *with Anton v. Getty,* 78 F.3d 393, 396 n.5 (8th Cir. 1996), we conclude that the claim has no merit.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Entzi does not allege that he was compelled by the petition to be a "witness" against himself "in a criminal case." Rather, Entzi argues that by petitioning to revoke probation, Bohn penalized Entzi for asserting the privilege, *see Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977), and that this penalty amounted to unconstitutional compulsion.

The Supreme Court in *McKune v. Lile*, 536 U.S. 24 (2002), held that a State may deny certain benefits or impose certain penalties on sex offenders who refuse to participate in a sex offender treatment program and admit prior offenses, so long as the consequences for failing to participate are not so great as to constitute unconstitutional "compulsion." 536 U.S. at 41 (plurality opinion); *id.* at 49 (O'Connor, J., concurring). Whether or not revocation of probation itself might be said to "compel" incriminating admissions, *cf. United States v. Antelope*, 395 F.3d 1128, 1139 (9th Cir. 2005), the mere *filing* of a petition to revoke probation, in response to Entzi's refusal to participate in sex offender treatment, is not a consequence serious enough to compel him to be a witness against himself in violation of the Fifth Amendment. *See McKune*, 536 U.S. at 36-42 (plurality opinion); *id.* at 50-51 (O'Connor, J., concurring in the judgment). Entzi was directed to discuss his offenses of conviction for a legitimate rehabilitative purpose, and the state court nonetheless *declined* to revoke Entzi's probation based on his refusal to participate in that rehabilitation. The only negative consequence alleged to have arisen from Bohn's action is that Entzi compensated an attorney to litigate the revocation matter. And even that consequence was incurred only because Entzi elected to decline court-appointed counsel paid by the State. The impact of Bohn's action on Entzi was not

nearly so great as to constitute compulsion for purposes of the self-incrimination clause of the Fifth Amendment.

Even if the mere filing of a petition to revoke probation could be viewed as unconstitutional "compulsion," moreover, it would not follow that Entzi has a cause of action for damages under § 1983. To the contrary, the general rule is that a person has no claim for civil liability based on the Fifth Amendment's guarantee against compelled self-incrimination unless compelled statements are admitted against him in a criminal case. *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion); *id*. at 778 (Souter, J., concurring in judgment). According to the narrowest opinion in *Chavez*, *see Marks v. United States*, 430 U.S. 188, 193 (1977), the "basic guarantee" of the self-incrimination clause is "evidentiary," so extensions of that guarantee are warranted only if "the core guarantee, or the judicial capacity to protect it, would be placed at risk in the absence of such complementary protection." *Id*. at 778 (Souter, J., concurring in judgment). A fractured Supreme Court left open the possibility that a "powerful showing" might persuade the court to expand the protection of the self-incrimination clause to the point of civil liability, *id*., but any judicially-crafted expansion of the clause typically "should be implemented by remedies other than money damages." *Allison v. Snyder*, 332 F.3d 1076, 1080 (7th Cir. 2003). Entzi has made no showing that traditional evidentiary protections are inadequate to protect his constitutional rights, and his claim for civil liability against probation officer Bohn fails on that ground as well.

B.

Entzi also brings a claim against prison officials in which he challenges the loss of performance-based sentence-reduction credits for failing to participate in the sex-offender treatment course. He asserts that the loss of the credits extended his term of imprisonment by more than a year. Entzi contends that by withholding the credits, prison officials punished his assertion of the privilege against self-incrimination. The

prison officials argue that the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), bars this claim. The district court granted judgment on the pleadings for the prison officials, and we review this decision *de novo*.

In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. Thus, a person challenging the duration of his imprisonment or the loss of sentence-reduction credits must do so by petitioning for a writ of habeas corpus. *See Edwards v. Balisok*, 520 U.S. 641, 645-47 (1997). Entzi argues that because the writ of habeas corpus is no longer available to him on a claim challenging the length of his imprisonment, *Heck* does not bar his § 1983 suit against the prison officials.

The opinion in *Heck* rejected the proposition urged by Entzi. The Court said that "the principle barring collateral attacks – a longstanding and deeply rooted feature of both the common law and our own jurisprudence – is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck*, 512 U.S. at 490 n.10. Entzi relies on a later decision of the Supreme Court, *Spencer v. Kemna*, 523 U.S. 1 (1998), in which a combination of five concurring and dissenting Justices agreed in *dicta* that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21 (Souter, J., concurring); *id.* at 25 n.8 (Stevens, J., dissenting). Absent a decision of the Court that explicitly overrules what we understand to be the holding of *Heck*, however, we decline to depart from that rule. *Accord Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998); *see also Cabrera v.*

*City of Huntington Park*, 159 F.3d 374, 380 n.6 (9th Cir. 1998); *but cf. Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 n.3 (6th Cir. 1999); *Nonette v. Small*, 316 F.3d 872, 876-77 (9th Cir. 2002).

Applying *Heck*, we agree with the district court that the favorable-termination rule bars Entzi's suit. If Entzi's challenge to the State's decision on sentence-reduction credits were to succeed, it "would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Therefore, the claim may be pursued only in an action for habeas corpus relief.

Alternatively, even if the Supreme Court were to direct that *Heck* does not bar an action when habeas corpus relief is unavailable, we conclude that the prison officials did not violate Entzi's right against self-incrimination by withholding sentence-reduction credits. Applying the Supreme Court's decision in *McKune*, the Tenth Circuit has concluded that the loss of good time credits does not amount to "compulsion" that violates the Fifth Amendment, even where an inmate was required to discuss uncharged sex offenses. *Searcy v. Simmons*, 299 F.3d 1220, 1222, 1227 (10th Cir. 2002). Entzi was directed to participate in sex offender treatment and to discuss only his offenses of conviction, after a fair criminal process, as part of a legitimate rehabilitation program that serves an important social purpose. *McKune*, 536 U.S. at 41 (plurality opinion). The North Dakota Department of Corrections has the exclusive discretion to determine whether an offender should be credited with a performance-based sentence reduction. N.D. Cent. Code 12-54.1-01; *State v. Trieb*, 516 N.W.2d 287, 292 (N.D. 1994). The loss of an opportunity for such a discretionary sentence-reduction credit is not among the consequences for non-compliance that go "beyond the criminal process and appear, starkly, as government attempts to compel testimony." *McKune*, 536 U.S. at 53 (O'Connor, J., concurring). Consistent with *Searcy*, we therefore hold alternatively that North Dakota's conditioning of sentence-reduction credits on participation in the sex offender

-8-

treatment program did not contravene the self-incrimination clause of the Fifth Amendment.

Finally, as with Entzi's claim against Bohn, we conclude that no damages remedy under § 1983 would be available to Entzi, even assuming the denial of sentence-reduction credits were deemed to be "compulsion" for purposes of the Fifth Amendment. No statements compelled from Entzi have been introduced in evidence in a criminal case, and there is no "powerful showing" that exclusion of evidence or injunctive relief with respect to the denial of credits would be an inadequate remedy for any violation that might be discerned in the operation of North Dakota's program for performance-based sentence reductions. *See Chavez*, 538 U.S. at 767 (plurality opinion); *id*. at 778 (Souter, J., concurring in judgment). Accordingly, Entzi's claim for damages against prison officials based on the self-incrimination clause was properly dismissed.

C.

In a separate claim, Entzi contends that prison officials denied him access to the courts by providing insufficient access to the prison's law library, and by failing to provide an adequate law library. While Entzi was incarcerated, prison officials granted inmates up to fifteen hours per week of outdoor recreation and library research combined. Entzi complains that he "should not have to forego outdoor recreation to which he would otherwise be entitled simply because he exercises his clearly established constitutional right of access to the courts." *Allen v. City & County of Honolulu*, 39 F.3d 936, 939 (9th Cir. 1994). He also argues that prison officials burdened this right of access to the courts by refusing to allow him to bring law books into his cell. The district court granted summary judgment to the prison officials, and we review the decision *de novo*.

The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds*, 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. Because "meaningful access to the courts is the touchstone," *id.* at 823 (internal quotation omitted), an inmate alleging a constitutional violation must show an "actual injury" by "demonstrat[ing] that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

Entzi alleges that the inadequacy of the prison library and his limited access to the library caused injury by interfering with the direct appeal of his conviction. On direct appeal, however, Entzi was represented by counsel. He thus enjoyed "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts," *Bounds*, 430 U.S. at 825, and any limitation on Entzi's access to the prison library did not deprive him of access to the courts.

Entzi further argues that the inadequacy of the library prejudiced his application for a writ of habeas corpus. The application was dismissed because Entzi filed the action more than two years after the statute of limitations had expired. As noted by the district court, the complaint does not explain how the refusal to order Entzi a personal copy of the North Dakota Century Code or the lack of a photocopier at the prison caused actual injury. At the relevant time, the prison made available in its library several copies of recent editions of the "Federal Civil Judicial Procedure and Rules," which described the applicable statute of limitations. (Appellee's App. 28 (inventory of books); *see* 28 U.S.C. § 2244(d)(1) (statute of limitations)). Entzi thus

has no basis to complain that the adequacy of the library prejudiced his ability to pursue a timely application for writ of habeas corpus.

We also reject Entzi's contention that fifteen hours per week provided insufficient access to the library for legal research on his habeas petition. Entzi complains that the library was open only during hours when he was allowed to engage in recreation, and that he was thus forced to choose between using the library and enjoying what he asserts is a constitutional right to outdoor recreation. *See Allen*, 39 F.3d at 939; *but cf. Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986). Even assuming some portion of the fifteen hours per week must be allocated to recreation, there is still no freestanding constitutional right to a particular number of hours in the prison law library. *Lewis*, 518 U.S. at 351; *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). The library books would have informed Entzi of the applicable statute of limitations, and he has not produced sufficient evidence that the number of hours available for legal research – even if it was something less than fifteen – was insufficient for him to locate this information. The officials' refusal to permit Entzi to bring books into his cell thus did not violate the Constitution.

\*     \*     \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____