In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-3460

CARL C. GILBERT, JR.,

*Petitioner-Appellant,*

*v.*

DEBORAH MCCULLOUGH,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13 CV 00048 — **William C. Griesbach**, *Chief Judge.*

ARGUED MAY 28, 2014 — DECIDED JANUARY 12, 2015

Before RIPPLE, WILLIAMS, and HAMILTON, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This petition for a writ of habeas corpus involves an individual with a pending civil commitment petition who violates his parole and receives a prison sentence for that violation. Carl C. Gilbert, Jr. had his parole revoked twice after he violated the conditions of his parole on two separate occasions. These violations occurred while a civil commitment petition was pending against him. At the trial on that petition, a jury found Gilbert to be a sexually vi-

olent person, and the court entered a civil commitment or-
der. But because Gilbert was sentenced to prison after his
second parole revocation, he served that sentence before be-
ing transferred to a Wisconsin Department of Health Ser-
vices ("DHS") facility as a civilly committed person. Gilbert
maintains that his commitment is contrary to the Supreme
Court's decision in *Foucha v. Louisiana*, 504 U.S. 71 (1992), be-
cause, in his view, there was not a "current" determination
that he was a sexually violent person when he entered DHS
care. Although the delay between the commitment verdict
and Gilbert's entry into DHS care concerns us, we do not
find the Wisconsin Supreme Court's decision rejecting Gil-
bert's due process argument to be contrary to or an unrea-
sonable application of clearly established United States Su-
preme Court precedent, particularly in light of the facts that
Gilbert's own parole violation caused the delay and he has
continued to be evaluated without any indication that his
condition has improved. We therefore affirm the judgment
of the district court.

## I. BACKGROUND

Gilbert was convicted of second-degree sexual assault in
Wisconsin state court on December 7, 1992 and sentenced to
ten years in prison. On December 4, 2006, shortly before he
completed his sentence (his sentence for sexual assault was
consecutive to another sentence), the State of Wisconsin filed
a petition seeking Gilbert's commitment under Wisconsin
Statute § 980.02 as a "sexually violent person." The state cir-
cuit court reviewed the petition that day and found probable
cause to believe that Gilbert was eligible for commitment.
Gilbert completed the prison portion of his sentence the next
day, but he was transferred to the Wisconsin Resource Cen-

ter, a facility operated by DHS, because of the pending commitment proceeding. He was still on parole.

Less than ten days after his transfer to the Center, Gilbert violated the conditions of his parole. As a result, he was returned to a Wisconsin Department of Corrections ("DOC") facility on January 19, 2007 pending a decision as to whether his parole would be revoked. The circuit court held a commitment petition hearing on March 22, 2007 and found probable cause to believe that Gilbert was a "sexually violent person" within the meaning of chapter 980 of the Wisconsin Statutes. The court then ordered Gilbert transferred for evaluation to the Center "or such other authorized institution as may be determined by the [DHS]." However, on August 8, 2007, Gilbert's parole was revoked, and he was reincarcerated at a DOC-operated facility.

A few months later, on October 17, 2007, the DOC granted Gilbert parole for a second time. Gilbert was transferred back to the Center pending resolution of the chapter 980 commitment petition. A little over a month after his transfer back to the Center, on November 25, 2007, Gilbert violated the terms of his second parole. He was reincarcerated at a DOC-operated facility pending the resolution of a parole revocation hearing. On December 28, 2007, his parole was revoked, and he began serving the resulting sentence.

Gilbert's chapter 980 civil commitment trial began on February 4, 2008. At the end of a three-day trial, the jury found beyond a reasonable doubt that Gilbert was a "sexually violent person" within the meaning of Wisconsin Statute § 980.06. The court entered a commitment order pursuant to § 980.06 ordering him committed to DHS for control, care, and treatment until he was no longer a sexually violent per-

son, and it ordered that his commitment was to institutional care in a secure facility.

Gilbert was not transferred to a DHS facility at that point, however, because he was still serving his sentence for his second parole violation. Instead, Gilbert remained in a DOC-operated facility to serve out his sentence. He completed the sentence in August 2010. He was then transferred to a DHS-operated facility in light of the February 2008 commitment order.[1]

On January 15, 2009, about eight months before he completed his sentence, Gilbert filed a post-conviction motion asserting that his December 28, 2007 parole revocation meant that the chapter 980 commitment petition must be dismissed. The state circuit court denied the petition. The Wisconsin appellate court affirmed, finding Gilbert's commitment authorized by the Wisconsin statutory scheme. *In re Commitment of Gilbert*, 798 N.W.2d 889, 891 (Wis. App. Ct. 2011) ("*Gilbert I*"). The court concluded that Gilbert's arguments relied on statutory interpretation and did not raise any developed constitutional arguments. *Id.* at 893 n.9. The Wisconsin Supreme Court affirmed the appellate court's decision, with two justices dissenting. *In re Commitment of Gilbert*, 816 N.W.2d 215 (Wis. 2012) ("*Gilbert II*"). It agreed with the appellate court that Gilbert's arguments were centered on the statutory interpretation of chapter 980. *Id.* at 220. The Wisconsin Supreme Court concluded that chapter 980 did not require dismissal of Gilbert's commitment petition because the chapter does not contain language allowing for

---

[1] The district court wrote that Gilbert was transferred to a DHS facility in 2009, but the parties agree that the correct date is August 2010.

dismissal in his circumstances, does not set a time period for execution of a commitment order, and provides that an individual may be simultaneously committed under chapter 980 and incarcerated at a DOC facility. *Id.* at 222. Regarding the last point, the court pointed to § 980.07(6m), which states that "[i]f a person committed under § 980.06 is incarcerated at a county jail, state correctional institution, or federal correction institution for a new criminal charge or conviction or because his or her parole was revoked, any reporting requirement … does not apply during the incarceration period." *Id.* at 226 (quoting Wis. Stat. § 980.07(6m)). Although Gilbert had not yet been committed when his parole was revoked, the court found that the language in § 980.07(6m) offered insight into how chapter 980 should be applied as a whole, and it ruled that simultaneous incarceration at a DOC facility and commitment under chapter 980 is permissible. *Id.* at 226-27.[2]

While finding Gilbert's constitutional arguments "poorly developed," the Wisconsin Supreme Court nonetheless addressed them and found no constitutional infirmity in Gilbert's commitment. *Id.* at 229-30. The court reasoned that nothing in its decision suggested that the State could forgo the statutory procedures for commitment set forth in chapter 980 and that these procedures adequately ensured that at the issuance of the commitment order, the court has determined

---

[2] Gilbert refers to August 2010 as the date of his commitment, while the State notes that February 2008 is the date Gilbert was ordered committed. The Wisconsin Supreme Court ruled that simultaneous commitment and incarceration were possible under state law, and indeed Wisconsin Statute § 980.07(6m) refers to a "committed" person who is incarcerated.

that the committed person is at that moment a sexually violent person. *Id.* at 230. The court also stated that if a person serves his prison sentence and is then transferred to DHS custody, he will be subject to periodic reevaluation to determine whether he remains a sexually violent person. *Id.* (citing Wis. Stat. § 980.07). With these protections, the Wisconsin Supreme Court found that sexually violent persons would "continue to be 'held as long as [they are] both mentally ill and dangerous, but no longer.'" *Id.* (quoting *Foucha*, 504 U.S. at 77). The court concluded that Gilbert's commitment was constitutionally permissible. *Id.*

Gilbert filed an application for a writ of habeas corpus with the federal district court under 28 U.S.C. § 2254. The district court denied Gilbert's request for habeas relief, and Gilbert appeals.

## II. ANALYSIS

A petitioner in custody pursuant to a state court judgment may receive a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A violation of state law is not sufficient. *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) (per curiam). Gilbert maintains he is entitled to habeas relief because, he contends, there was no "current" finding that he was a sexually violent person when he entered DHS care in August 2010. He argues that his commitment therefore violates his right to due process guaranteed by the United States Constitution, and he requests his immediate release.

To receive a writ of habeas corpus, Gilbert must demonstrate that the Wisconsin Supreme Court's decision ruling

against him was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Gilbert contends that the Wisconsin decision was contrary to, or involved an unreasonable application of, the United States Supreme Court's decision in *Foucha v. Louisana*, 504 U.S. 71 (1992).

The Supreme Court has made clear that federal courts are not to find lightly that a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." For purposes of 28 U.S.C. § 2254(d)(1), "clearly established Federal law" "refers to the holdings, as opposed to the dicta," in Supreme Court decisions. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quotation omitted). In *Carey v. Musladin*, 549 U.S. 70 (2006), for example, the Supreme Court overturned habeas relief granted on the basis that courtroom spectators had worn buttons with victim photographs. *Id.* at 72. The Court reasoned that "in contrast to state-sponsored courtroom practices," the effect of spectator conduct on fair-trial rights "is an open question in [the Court's] jurisprudence" that the Court had never addressed. *Id.* at 76. "Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the Supreme Court stated, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Id.* at 77 (quoting 28 U.S.C. § 2254(d)(1)); *see also Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (per curiam) (reversing grant of habeas relief where lawyer participated in plea hearing by speakerphone because "[n]o decision of this Court … squarely addresses the issue in this case").

That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (per curiam) (quoting *Alvarado*, 541 U.S. at 664). And state courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law as determined by the United States Supreme Court on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). In this regard the Supreme Court has made clear that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Alvarado*, 541 U.S. at 664). Being merely wrong is not sufficient, nor is "clear error" enough. *White*, 134 S. Ct. at 1702. Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87. Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has

not been squarely established by [the Supreme] Court." *Mirzayance*, 556 U.S. at 122 (internal quotations omitted).

The Supreme Court has clearly established that a convicted felon has a liberty interest in not being civilly committed without appropriate procedures to prove that commitment is warranted. *Vitek v. Jones*, 445 U.S. 480, 492-93 (1980). "A criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections." *Id.* at 493-94. The Supreme Court has also clearly established that to satisfy due process guarantees, the State must be held to a burden of proof of at least "clear and convincing" evidence when it pursues civil commitment. *Addington v. Texas*, 441 U.S. 418, 433 (1979). Ordinarily, what must be proven is that the person sought to be committed is dangerous to himself or others, along with some additional factor such as "mental illness," or "mental abnormality," *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997), or a personality disorder that results in "serious difficulty in controlling behavior," *Kansas v. Crane*, 534 U.S. 407, 411-12 (2002).

Gilbert does not challenge the February 2008 determination that he was a "sexually violent person," nor does he dispute that this determination meant Wisconsin could civilly commit him. Wisconsin has a comprehensive statutory scheme for the commitment of sexually violent persons, with provisions for, among other things, notice, Wis. Stat. § 980.03(1); appointment of counsel for indigent persons, Wis. Stat. § 980.03(2)(a); the right to remain silent, Wis. Stat.

§ 980.03(2)(b); the right to present and cross-examine witnesses, Wis. Stat. § 980.03(2)(c); and the right to a jury trial, Wis. Stat. § 980.03(3). Wisconsin also requires that the State prove beyond a reasonable doubt that the subject of the petition is a sexually violent person. Wis. Stat. § 980.05(3)(a). There is no dispute that the State followed all these procedures in Gilbert's case.

The jury found beyond a reasonable doubt at the commitment trial that Gilbert was a sexually violent person. A "sexually violent person" under Wisconsin law is

> a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence.

Wis. Stat. § 980.01(7). A "mental disorder" under this provision means "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." Wis. Stat. § 980.01(2). Gilbert had been convicted of a sexually violent offense. The jury also found beyond a reasonable doubt that Gilbert was dangerous because he suffers from a mental disorder that makes it likely that he will engage in one or more acts of sexual violence.

So the burden of proof did not contravene Supreme Court precedent. Nor did the requirements for finding that Gilbert could be committed. The procedure by which Gilbert

was found to be a sexually violent person and therefore could be committed was in line with Supreme Court decisions, and Gilbert does not challenge it.

Instead, Gilbert's position is that his commitment violates his federal right to due process because there was no "current" finding that he was a sexually violent person when he completed his prison sentence in August 2010 for his second parole revocation and was transferred to a DHS-operated facility. The Wisconsin Supreme Court rejected this argument, and Gilbert maintains that decision is contrary to or an unreasonable application of the United States Supreme Court's decision in *Foucha.*

*Foucha* involved a challenge by a person civilly committed under the then-Louisiana state process that "allow[ed] a person acquitted by reason of insanity to be committed to a mental institution until he is able to demonstrate that he is not dangerous to himself and others, even though he does not suffer from any mental illness." 504 U.S. at 73. The Supreme Court held that Terry Foucha's due process rights were violated. *Id.*

Foucha had been found not guilty by reason of insanity of aggravated burglary and illegal discharge of a firearm. *Id.* at 74. He was then committed. Several years later, the superintendent of Foucha's facility recommended release. A three-member panel convened at the facility reported that there had been no evidence of mental illness in Foucha since his admission and recommended his conditional discharge. The state court trial judge then appointed a two-member commission consisting of the same two doctors who had examined Foucha before trial. The doctors' written report stated that Foucha was presently in remission from mental illness

but that they could not say he would not be a danger to himself or others if released. *Id.* at 74-75. The doctor who testified at the hearing said that Foucha had probably suffered from a drug-induced psychosis at the time of the crime but had since recovered. *Id.* at 75. The doctor also testified that Foucha evidenced no present signs of psychosis or neurosis and was in "good shape" mentally, but that Foucha had an antisocial personality, a condition that is not a mental disease. The doctor recounted that Foucha had been involved in several altercations at the facility, and the doctor stated he would not feel comfortable certifying that Foucha would not be a danger to himself or others. The trial court ruled that Foucha was dangerous to himself and others, and, based on this determination, ordered Foucha's commitment to continue. The Louisiana state appellate courts rejected Foucha's argument that his federal due process and equal protection rights were violated by the statutory scheme that allowed confinement of an insanity acquittee based on dangerousness alone. *Id.*

The United States Supreme Court reversed. The Court explained that it had held in *Addington* that to civilly commit a person, the State must prove two things by clear and convincing evidence: first, that the person is mentally ill, and next, that he requires hospitalization for the protection of himself and others. *Id.*, 504 U.S. at 76 (citing *Addington*, 441 U.S. 418). But, it explained, when a person is found not guilty by reason of insanity (as Foucha had been), that determination establishes that the defendant committed an act constituting a criminal offense, and that he did so because of mental illness. *Id.* (citing *Jones v. United States*, 463 U.S. 354, 363 (1983)). As a result, the State in such a case need not go through the steps of making the *Addington* proof because it

can be inferred from the not guilty by reason of insanity verdict that the defendant was mentally ill and dangerous at the time of the verdict and therefore could be committed. *Id.*

The Supreme Court emphasized, however, that it had already held that a person committed because of an insanity verdict is entitled to release when he recovers his sanity or is no longer dangerous. *Id.* at 77 (citing *Jones*, 463 U.S. at 368); *see also O'Connor v. Donaldson*, 422 U.S. 563, 574-75 (1975) (unconstitutional to continue to confine a harmless, mentally ill person, even if original confinement was permissible, where initial basis no longer exists). The Court then stated: "In this case, Louisiana does not contend that Foucha was mentally ill at the time of the trial court's hearing." *Foucha*, 504 U.S. at 78. As a result, "the basis for holding Foucha in a psychiatric facility as an insanity acquittee has disappeared, and the State is no longer entitled to hold him on that basis." *Id.*

The Court next refuted the State's argument that it could continue to confine Foucha on the basis of his antisocial personality, which the trial court had found made him a danger to himself or others. *Id.* at 78. For one, the Court said, in a statement Gilbert emphasizes, "even if his continued confinement were constitutionally permissible, keeping Foucha against his will in a mental institution is improper absent a determination in civil commitment proceedings of current mental illness and dangerousness." *Id.* at 79. The Court stated that due process requires that the nature of the commitment bear some reasonable relation to the purpose for which the individual is committed. Yet in the case before it, according to the testimony given at the hearing, "Foucha is not suffering from a mental disease or illness." *Id.* That meant, said

the Court, that "[i]f he is to be held, he should not be held as a mentally ill person." *Id.* The Court next stated that if Foucha could no longer be held simply by virtue of being an insanity acquittee, he is entitled to constitutionally adequate procedures to establish the grounds for his confinement. *Id.* The Court recognized that in certain narrow circumstances persons may be subject to limited confinement on the sole basis that they pose a danger to themselves or others, but it found that principle inapplicable in Foucha's case. *Id.* at 80-81.

Justice O'Connor, the fifth vote in favor of finding that the Louisiana scheme violated Foucha's right to due process, wrote separately "to emphasize that the Court's opinion addresses only the specific statutory scheme before us, which broadly permits indefinite confinement of sane insanity acquittees in psychiatric facilities." *Id.* at 86-87 (O'Connor, J., concurring). She continued: "This case does not require us to pass judgment on more narrowly drawn laws that provide for detention of insanity acquittees, or on statutes that provide for punishment of persons who commit crimes while mentally ill." *Id.* at 87. She further stated that she did "not understand the Court to hold that [a state] may never confine dangerous insanity acquittees after they regain mental health." *Id.*

In arguing that his commitment is contrary to or an unreasonable application of *Foucha*, Gilbert stresses one of the statements we quoted from that case—"keeping Foucha against his will in a mental institution is improper absent a determination in civil commitment proceedings of current mental illness and dangerousness." *Id.* at 78. Gilbert contends that he must be released because, according to him,

there was not a "current" showing that he was a sexually violent person in August 2010 when he was transferred to a DHS facility. The Wisconsin Supreme Court rejected the argument that *Foucha*'s "current mental illness and dangerousness" language meant Gilbert was entitled to release, and our question is whether that decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S. Ct. at 786-87.

Were the question presented to us an initial question of federal constitutional law, we might reach a different result. The two-and-a-half year delay between the order of commitment and Gilbert's entry into DHS care is certainly a concern for us. We are constrained, though, by the posture of this case and by the narrow scope of our habeas review. The Wisconsin Supreme Court concluded that its statutory scheme allowed the simultaneous commitment and incarceration of a sexually violent person, and that *Foucha* did not preclude such an interpretation. *Gilbert II*, 816 N.W.2d at 229-30. The Wisconsin court emphasized that the State was still required to follow the commitment procedures in chapter 980 of the Wisconsin statutes, which it said ensured that the committed person was at the moment that determination was made a sexually violent person. *Id.* at 230. The court also stated that a person who serves a sentence of incarceration and is then transferred to DHS custody will be subject to periodic reevaluation once in DHS care to determine whether he remains a sexually violent person. *Id.* (citing Wis. Stat. § 980.07). The Wisconsin Supreme Court concluded that these protections meant that sexually violent persons will continue to be "'held as long as [they are] both mentally ill

and dangerous, but no longer.'" *Id.* (quoting *Foucha*, 504 U.S. at 77).

Applying the 28 U.S.C. § 2254 standard of review as we must, we do not find the Wisconsin decision denying Gilbert relief to be contrary to or an unreasonable application of clearly established United States Supreme Court law. For one, unlike in *Foucha*, there is no suggestion that Gilbert no longer suffers from a mental disorder. That is significant. The State in *Foucha* conceded that the petitioner was no longer mentally ill yet it still wanted to hold him committed, and it wanted to do so even without assuming the burden of showing he is dangerous by clear and convincing evidence. *Foucha*, 504 U.S. at 86. The State of Wisconsin, in contrast, makes no concession that Gilbert no longer suffers from a mental disorder. Gilbert also does not argue that he no longer has a mental disorder. A jury found beyond a reasonable doubt that Gilbert had a mental disorder that made it likely he would engage in sexual violence. There is no indication he longer has such a disorder, unlike the evidence from doctors and others in *Foucha* that the petitioner there was not suffering from a mental illness.[3]

---

[3] Another difference between this case and *Foucha* is that a mental disorder and dangerousness were not inferred in Gilbert's case. That *Foucha* was found not guilty by reason of insanity meant that it could be "inferred that at the time of the verdict, the defendant was still mentally ill and dangerous and hence could be committed." *Foucha*, 504 U.S. at 76. In Gilbert's case, in contrast, mental illness and dangerousness were not inferred. Rather, a jury found beyond a reasonable doubt that he had a mental disorder and was dangerous.

And the Supreme Court of Wisconsin did not rule or intimate that Gilbert could be committed, or that his commitment could continue, if he no longer had a mental disorder. *Cf. Foucha*, 504 U.S. at 77 (stating that a civilly committed person could "be held as long as he is both mentally ill and dangerous, but no longer"). Indeed, unlike the Louisiana statutory scheme in *Foucha*, Wisconsin's statute only allows a person to be committed "until such time as the person is no longer a sexually violent person." Wis. Stat. § 980.06. Recall that a "sexually violent person" requires that a person be "dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence." Wis. Stat. § 980.01(7). In the Louisiana scheme before the Court, whether a person was currently mentally ill was irrelevant; that is not true in Wisconsin because in Wisconsin a person cannot be held if he no longer suffers from a mental disorder making it likely the person will engage in sexual violence.

In addition to the absence of a suggestion that Gilbert is not currently suffering from a mental illness, Gilbert's parole revocations and resulting sentences make his circumstances unique. He was ordered committed after a jury found him to be a sexually violent person, and no one questions that he could be committed then. But Gilbert violated the conditions of his parole twice after the commitment petition had been filed. Only because he violated his parole did he stay in DOC custody as long as he did after the jury ruled he should be civilly committed. Neither *Foucha* nor any other United States Supreme Court decision speaks to this or an analogous situation. *Cf. Francis S. v. Stone*, 221 F.3d 100, 113 (2d Cir. 2000) ("It is arguable that the Supreme Court would have ruled in favor of Foucha if he had been mentally ill but

no longer dangerous, but the holding is only that civil commitment procedures are required for an insanity acquittee who is no longer mentally ill."). No United States Supreme Court case has considered a delay between a commitment order and transfer of custody to a mental health facility, or a time period between examinations. Nor did *Foucha* or any other Supreme Court decision consider the effect of a new conviction or parole revocation on a civil commitment proceeding.[4]

We turn next to the fact that Gilbert did not receive treatment or annual reexaminations of his status while he was in the DOC serving his sentence for the second parole violation. After examining chapter 980 in detail, we are satisfied that Wisconsin's statutory scheme means that Gilbert "has prompt opportunity to obtain release if he has recovered." *Jones*, 463 U.S. at 366. We say that recognizing that serving the parole revocation sentence meant there was a two-and-a-half year delay between Gilbert's commitment

---

[4] While not directly relevant to our constitutional analysis, we also note that under Wisconsin law, a petition for civil commitment on the basis that the person is a sexually violent person must be filed before the person is released or discharged from custody for the sexually violent offense. Wis. Stat. § 980.02(1m); *In re Commitment of Spaeth*, 850 N.W.2d 93, 98 (Wis. 2014). The State argues that means that if a person commits a crime that is not a sexually violent offense while in a DHS institution as a civilly committed person, is prosecuted, and serves a sentence, the State cannot file a petition again to have the person re-committed as a sexually violent person. That is a difficult proposition because it means that a person who would have otherwise remained civilly committed would instead be released as a result of his criminal conduct. That is, a person's criminal acts would end an otherwise valid commitment even though no determination was made that the person was no longer a sexually violent person.

order and when he began receiving treatment. *See Spaeth*, 850 N.W.2d at 101 (recognizing that primary goals of chapter 980 are the treatment of sexually violent persons and protection of society).

Pursuant to Wisconsin law, a committed person is to be reexamined by a mental health professional at least every twelve months "to determine whether the patient has made sufficient progress for the court to consider whether the person should be placed on supervised released or discharged." Wis. Stat. § 980.07(1). The person has the right at that time to also be examined by an independent examiner. *Id.*; *In re Commitment of Arends*, 784 N.W.2d 513, 518 (Wis. 2010). Consistent with Wisconsin state law, Gilbert did not receive annual reexaminations of his mental condition while he served his sentence in the DOC from February 2008 to August 2010. *See* Wis. Stat. § 980.07(6m) ("If a person committed … is incarcerated … for a new criminal charge or conviction or because his or her parole was revoked," annual reexamination requirement does not apply during the incarceration period.). Gilbert does not contest, however, that he has been receiving the requisite reexaminations since his entry into DHS care. *Cf.* Wis. Stat. § 980.07(6m) (providing that reeexamination requirement resumes upon release from incarceration).[5]

In addition to the required annual reexaminations, the Wisconsin statutory scheme also allows a person civilly

---

[5] We note that many, but not all, of the states that allow civil commitment of sexually violent persons require an annual reexamination. *See, e.g.,* 725 Ill. Comp. Stat. 207/55. Virginia, for example, requires a yearly hearing regarding the continued need for secure inpatient treatment for the first five years, then only at biennial intervals thereafter. Va. Code. Ann. § 37.2-910(A).

committed as a sexually violent person to "petition the committing court for discharge at any time." Wis. Stat. § 980.09(1). Wisconsin requires the court to refer a petition for discharge filed without counsel "as soon as circumstances permit" for indigency and appointment of counsel determinations. Wis. Stat. § 980.09(1m)(b) (citing Wis. Stat. § 977.01(1) and § 977.05(4)(j)). Under Wisconsin Statute § 980.09(1), a committed person who files a petition for discharge has the initial burden of alleging facts that would allow a reasonable trier of fact to conclude that he does not meet the criteria for commitment as a sexually violent person. *Id.*; *Martin v. Bartow*, 628 F.3d 871, 875 (7th Cir. 2010); *Arends*, 784 N.W.2d at 514, 519. The court's review of the petition at this point is only a "limited review," where the "standard is similar to that used in civil cases to decide a motion to dismiss for failure to state a claim upon which relief can be granted under [the Wisconsin code]." *Arends*, 784 N.W.2d at 520.

If the petitioner alleges sufficient facts, the court will appoint an examiner upon request, unless one was already appointed for the current reexamination period. Wis. Stat. § 980.09(1m)(d). The court will later conduct another "limited" review to determine whether the record contains any facts that would allow a factfinder to grant relief at a discharge hearing; if so, then the court must set the matter for trial. *Id.* § 980.09(2); *Arends*, 784 N.W.2d at 521-23. The court may hold a hearing as it makes this determination, Wis. Stat. § 980.09(2), but the Wisconsin Supreme Court has emphasized that "the standard is not whether the evidence more heavily favors the petitioner," and that the petitioner "does not need to prove a change in status in order to be entitled to a discharge hearing." *Arends*, 784 N.W.2d at 522. Rather, "If

any facts support a finding in favor of the petitioner, the court must order a discharge hearing on the petition." *Id.* at 523.

At trial, it is the State that has the burden of proving by clear and convincing evidence that the person meets the criteria for commitment as a sexually violent person. Wis. Stat. § 980.09(3). If the State does not do so, the petitioner must be discharged. *Id.* § 980.09(4). This procedure that allows a person to petition for discharge at any time is in addition to the statutory requirement of a yearly reexamination, where the examiner is to use the criteria set forth in Wisconsin Statute § 980.09(3) when determining whether a person should be discharged. *See* Wis. Stat. § 980.07(1).[6]

In addition, the difference in the standard of proof between the initial commitment hearing and the discharge hearing does not mean a clearly established constitutional infirmity. Wisconsin has set the State's burden of proof at a § 980.09(3) discharge trial as a showing by clear and convincing evidence, while the State's burden of proof at the initial commitment hearing is proof beyond a reasonable doubt. *See* Wis. Stat. § 980.05(3)(a). The United States Supreme Court has not spoken to the level of proof required at a release hearing for a civilly committed person. *Addington* only requires the State to assume the burden at the initial commitment determination, and it only requires it to assume a burden of proof standard of clear and convincing evidence. 441

---

[6] Wisconsin also allows a committed person, or the director of the facility where the person is placed, to petition the court for supervised release. Wis. Stat. § 980.08(1). That procedure is discussed in detail in Wisconsin Statute § 980.08. We do not do so here in light of Gilbert's requested relief of immediate release.

U.S. at 443. That is the same burden that Wisconsin requires the State to assume at the discharge hearing, so even if *Addington* applied at discharge proceedings, the Wisconsin scheme would comply. *See Milinich v. Ahlin*, No. 09-2612, 2014 WL 5793959, at *6 (N.D. Cal. Nov. 6, 2014) (denying habeas petition and stating Supreme Court has never held that prosecution must bear burden of proof at release hearing where person was initially civilly commitment at hearing where prosecution bore burden beyond a reasonable doubt). We are satisfied that Wisconsin's statutory procedures mean that Gilbert has the opportunity to obtain release if he has recovered, *Jones*, 463 U.S. at 366, and that the Wisconsin scheme only condones his commitment as long as he remains a sexually violent person, Wis. Stat. § 980.06.

Again, Gilbert does not contest that he has been receiving annual reexaminations since his entry into DHS care in August 2010. Those reexaminations have not resulted in a determination that he is no longer a sexually violent person. In this regard there are similarities between the circumstances here and those in another Wisconsin Supreme Court case, *State ex rel. Marberry v. Macht*, 665 N.W.2d 155 (Wis. 2003), which we note while recognizing it is not controlling here. There a person civilly committed as a sexually violent person filed suit after he had not received a reexamination of his mental condition within the six months of his initial commitment, as was then required by Wisconsin statute. *Id.* at 158 (citing Wis. Stat. § 980.07(1) (1998)). Although he received a court order directing reexamination, he did not receive his first reexamination until almost two years after his initial commitment. *Id.* at 158. Nonetheless, the Wisconsin Supreme Court unanimously declined his request for immediate release. *See id.* at 157; *id.* at 165 (Bradley, J., concurring).

The lead opinion ruled that while conducting timely reexaminations was mandatory, adequate remedies other than discharge existed including mandamus directing a reexamination, backed by contempt. *Id.* at 163. The opinion explained that release and discharge from commitment for failure to conduct a timely reexamination, without a determination that the person is no longer a sexually violent person, "would compromise both of Chapter 980's principal purposes—treatment and public protection—because, until a circuit court finds otherwise, the committed person remains in need of treatment and at high risk to reoffend." *Id.* at 164. The court also emphasized that at the time of the opinion, the petitioner had been reexamined three times, and according to each, he remained a sexually violent person. *Id.* at 158 n.2, 165 n.11.

We emphasize that our decision is a narrow one. We need not get into the potential federal due process implications of Wisconsin Supreme Court statements that Gilbert emphasizes—that the Wisconsin statute "does not specify when the commitment must commence" and so the State could seek a civil commitment "at any time" after a person has been convicted of a sexually violent offense. *Gilbert II*, 816 N.W.2d at 224-25 (construing Wis. Stat. § 980.06). Gilbert worries that this language means the State might seek and obtain a commitment order early into a person's ten- or twenty-year sentence, and then a person would be committed based on a mental disorder determination made ten or twenty years earlier.[7] But that is not what happened here.

---

[7] The Wisconsin Supreme Court noted in another case that because Wisconsin Statute § 980.15 requires the agency with custody over a sexually violent offender to notify the State within ninety days of the pris-

Days before his release on parole for his second-degree sex-
ual assault sentence, the State petitioned for Gilbert's com-
mitment. Only because Gilbert later violated his parole did
the delay between the commitment order and Gilbert's entry
into a DHS facility occur. We decide today Gilbert's case,
and not any theoretical possibilities that he contemplates.
Perhaps the Wisconsin Supreme Court would find a due
process violation in his scenarios, making our review unnec-
essary; we do not know.

Concluding that habeas relief is not available to Gilbert is
consistent with one of the few cases to have considered an
analogous situation, *Smith v. Richards*, 569 F.3d 991 (9th Cir.
2009). There, Smith was released on parole in Alaska after
serving a rape sentence but failed to report as directed. *Id.* at
992. After his arrest in Washington for another rape, Alaska
authorities filed a detainer and parole warrant. Smith was
convicted in Washington. The day before his Washington
sentence was to end, the State of Washington filed a petition
to have him civilly committed as a sexually violent predator.
A jury found Smith to be a sexually violent person, and the
court entered an order of commitment. Smith filed a petition
in federal court for a writ of habeas corpus, arguing that his
commitment order was unconstitutional because he would
be transferred to prison in Alaska after his Washington sen-
tence ended rather than being immediately committed. The
Ninth Circuit rejected his argument, explaining that the state
court reasonably concluded that Smith remained dangerous

---

oner's impending discharge or release, "the practical effect" is that the
State will generally have a ninety-day window before release to file a
commitment petition. *Spaeth*, 850 N.W.2d at 101 (citing Wis. Stat.
§ 980.015(2)(a)).

because he might go to Alaska and serve his time but could return to Washington and reoffend. *Id.* at 994. In upholding the commitment order, the court reasoned that "[t]he Supreme Court has not clearly spoken on the question of how, if at all, one state's detainer affects another state's application of its laws in this context. This silence alone is sufficient to uphold the Washington Court of Appeals decision under AEDPA." *Id*. The court concluded that the state court reasonably applied federal law and that the civil commitment was constitutional, which meant that Smith could serve a scheduled 215-day prison sentence and then be civilly committed. *Id.* at 994-95.

We do not believe the Supreme Court has spoken to Gilbert's circumstances either. There is no question that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington*, 441 U.S. at 425. This is especially true for Gilbert because his civil commitment as a sexually violent person in Wisconsin is indeterminate. The delay between his commitment order and entry into DHS care concerns us, but our posture on habeas review constrains our inquiry. Significant in this regard is that *Foucha* involved a person who was no longer mentally ill. The Court also did not have to consider the effect of any new conviction or parole revocation on a civil commitment. *Cf. Musladin*, 549 U.S. at 76 (finding open question in Supreme Court jurisprudence did not warrant habeas relief). In the circumstances here, we find that at the least "fairminded jurists could disagree" as to whether the Wisconsin decision was correct. *See Harrington*, 131 S. Ct. at 786. Therefore, we do not find the Wisconsin Supreme Court's decision to be contrary to or an unreasonable appli-

cation of clearly established United States Supreme Court law.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.