# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3385

_____

Clay Irwin Thomas

*Plaintiff - Appellant*

v.

Scott Eschen; Kathy Eschen; Greg Ort; Garry Keller

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 16, 2019
Filed: June 27, 2019

_____

Before LOKEN, GRASZ, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Clay Thomas, an Iowa state prisoner, claims that prison officials violated his Eighth and Fourteenth Amendment rights when they had him civilly committed and forcibly medicated. Because Thomas's wrongful-commitment claim "is not cognizable under [42 U.S.C.] § 1983," *Heck v. Humphrey*, 512 U.S. 477, 487 (1994),

and his forced-medication claim lacks evidentiary support, we affirm the district court's[1] grant of summary judgment dismissing both claims.

I.

Iowa prison officials successfully applied to have Thomas civilly committed in 2013. *See In re C.I.T.* (*Thomas I*), No. 14-0760, 2015 WL 576172, at *1–2 (Iowa Ct. App. Feb. 11, 2015) (unpublished). Since then, Iowa courts have repeatedly extended his civil commitment based on evidence that he is "seriously mentally impaired" and poses a danger to himself and others. *See, e.g.*, *id.*; *In re C.I.T.* (*Thomas II*), 885 N.W.2d 830, 2016 WL 4036244, at *1 (Iowa Ct. App. July 27, 2016) (unpublished); *cf. In re C.T.* (*Thomas III*), No. 18-0320, 2018 WL 6706242, at *1 (Iowa Ct. App. Dec. 19, 2018) (unpublished) (affirming on procedural grounds). In particular, these decisions have emphasized Thomas's misbehavior in prison, including incidents in which he "stood up and pushed a table at a staff member," *Thomas I*, 2015 WL 576172, at *1, and "was involved in a physical altercation with another inmate," *Thomas II*, 2016 WL 4036244, at *1.

Meanwhile, in 2016, Thomas brought a lawsuit under 42 U.S.C. § 1983 against several prison officials for "improperly civilly committ[ing]" him. His theory was that they misrepresented what he did in prison and, at certain points, had actually "encouraged" him to misbehave, which they then used to justify his civil commitment. Once he was committed, Thomas alleges, the officials had him forcibly medicated, which has "caused . . . significant emotional and mental harm." The district court dismissed Thomas's claims on summary judgment. Our review of its decision is de novo. *See Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

II.

Thomas's principal claim is that civilly committing him violated his constitutional rights. Although Thomas does not challenge the constitutionality of Iowa's civil-commitment system in the abstract, he complains that prison officials had him wrongfully committed through deception and manipulation.

Thomas's claim, however, collides with the rule from *Heck v. Humphrey*. In *Heck*, the Supreme Court held that a claim for damages is "not cognizable under § 1983" if it would undermine a still-valid state criminal judgment. 512 U.S. at 486–87. To be sure, Thomas's claim involves a *civil*-commitment order, not a *criminal* conviction, and neither this court nor the Supreme Court has applied *Heck* in this particular context, at least in a published decision.[2] *Cf. id.* at 486 (invoking "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding *criminal* judgments" (emphasis added)). Even so, *Heck*'s logic reaches Thomas's wrongful-commitment claim too.

*Heck* addressed a state prisoner's allegations that officials involved in his prosecution had conducted an unlawful investigation, destroyed exculpatory materials, and introduced illegal evidence at his trial. *Id.* at 479. Relying on the premise that "the common law of torts . . . provide[s] the appropriate starting point for the inquiry under [section 1983]," the Supreme Court "analog[ized] [the prisoner's] claims" to the closest "common-law cause of action" it could find: malicious prosecution. *Id.* at 483–84 (citation omitted); *cf. Smith v. Wade*, 461 U.S.

---

[2]*Cf. Taft v. Branstad*, 754 F. App'x 503, 504 n.3 (8th Cir. 2019) (unpublished per curiam) (applying *Heck* to claims that "might be construed as an attempt to obtain discharge from [civil commitment]"); *Karsjens v. Piper*, 845 F.3d 394, 406 (8th Cir. 2017) (discussing *Heck* in the context of civil commitments, but then holding that it did not apply because the plaintiffs were not attacking the validity of their commitments or asking for immediate release); *Coffman v. Blake*, 156 F. App'x 863, 863–84 (8th Cir. 2005) (unpublished per curiam) (applying *Heck* to claims by a civilly committed person); *Carter v. Bickhaus*, 142 F. App'x 937, 938 (8th Cir. 2005) (unpublished per curiam) (same).

30, 34 (1983) (interpreting section 1983 in light of both modern tort law and tort law as it existed in 1871—the year Congress enacted the statute). It then reasoned that, because "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused," the prisoner's still-valid conviction meant that his claims were "not cognizable under § 1983." *Heck*, 512 U.S. at 484, 487. A contrary rule, the Court explained, posed the risk of having "parallel litigation" leading to "two conflicting resolutions arising out of the same or identical transaction," which would undermine both "finality and consistency." *Id.* at 484–85 (citation omitted).

The same is true in this case. Iowa courts have extended Thomas's commitment several times since he filed his section 1983 action, so the risk of parallel litigation is not just hypothetical here. *See, e.g.*, *Thomas II*, 2016 WL 4036244, at *1; *Thomas III*, 2018 WL 6706242, at *1. And as in *Heck*, Thomas is trying to use section 1983 to bring what is essentially a malicious-prosecution claim.

Courts have long recognized that individuals like Thomas can sue those who pursue "unfounded proceedings . . . to have [them] declared insane" for malicious prosecution, even if the proceedings are "not criminal in their nature." Thomas M. Cooley, *A Treatise on the Law of Torts* 188 (1879); *accord* 1 Fowler V. Harper et al., *Harper, James and Gray on Torts* 525–26 (3d ed. 2006); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 890 (5th ed. 1984); *see also, e.g.*, *Lockenour v. Sides*, 57 Ind. 360, 364–65 (1877) (authorizing an action against defendants who, "maliciously and without probable cause," brought "proceedings to procure the plaintiff to be found insane").[3] Those who "institute[] and carr[y] on" such

---

[3]There is a longstanding split involving whether an individual can sue over *any* malicious civil prosecution, or just one that inflicts a "special injury." Keeton et al., *supra*, at 889–90; *see also* Cooley, *supra*, at 187; *Kolka v. Jones*, 71 N.W. 558, 559 (N.D. 1897) (collecting cases). This debate is immaterial here, however, because even those jurisdictions that require a special injury recognize that a malicious civil-commitment proceeding creates one. Keeton et al., *supra*, at 890 & n.7; *see also* Cooley, *supra*, at 188; *cf. Kolka*, 71 N.W. at 559 (noting a widely

proceedings are liable for any false representations they make about the victim's competency. *Lockenour*, 57 Ind. at 360, 364; *accord* Keeton et al., *supra*, at 893 (explaining that the victim may sue anyone who "play[ed] a major role in instigating the [malicious] action"); *see also, e.g.*, *Reade v. Halpin*, 193 A.D. 566, 569–70 (N.Y. App. Div. 1920) (highlighting allegations that the defendants provided "false information" to the "medical examiners [who] certified to the lunacy of the plaintiff"), *appeal dismissed*, 130 N.E. 905 (N.Y. 1921) (per curiam).

To bring such an action, however, the plaintiff ordinarily has to "prove the termination of the former proceeding in his favor."[4] Keeton et al., *supra*, at 892; *accord* Harper et al., *supra*, at 515–16 (noting that "[t]he same conditions necessary to support a tort action for the malicious prosecution of criminal proceedings are generally required in the case of civil proceedings"); *cf.* Cooley, *supra*, at 187–88.[5]

_____

accepted cause of action for wrongful civil proceedings that involve "the arrest of the person," "the seizure of property," or "other special circumstances").

[4]Courts have recognized an exception to the favorable-termination requirement when the underlying civil proceeding was "an ex parte one [in which] relief [was] granted without an opportunity for the party against whom it [was] sought to be heard." Keeton et al., *supra*, at 892; *accord* Harper et al., *supra*, at 515–16; *cf.* Cooley, *supra*, at 188. This carveout is not relevant here because Thomas does not claim that he lacked an opportunity to argue against civil commitment. To the contrary, his complaint alleged that he "was able to challenge the civil commitment . . . and call[] witnesses to testify." *See also, e.g.*, *Thomas I*, 2015 WL 576172, at *1 (considering and rejecting Thomas's objections); *Thomas II*, 2016 WL 4036244, at *1 (same).

[5]*See also, e.g.*, *Barton v. Woodward*, 182 P. 916, 917 (Idaho 1919) (mem.) (referencing the favorable-termination requirement); *Lockenour*, 57 Ind. at 361, 364–65 (same); *Fowle v. Fowle*, 140 S.E.2d 398, 401–02 (N.C. 1965) (explaining that another court had already determined that the plaintiff was "being improperly restrained [and had] ordered her release"); *Straka v. Voyles*, 252 P. 677, 678 (Utah 1927) (noting that the plaintiff was "adjudged . . . not insane"). *But cf. Fisher v. Payne*, 113 So. 378, 380–81 (Fla. 1927) (suggesting, in dicta, that this requirement does not apply when a plaintiff has been committed under a statutory "inquisition" process rather than an adversarial "criminal prosecution or a civil action"); *Kellogg*

Given that Thomas has not done so, we have little trouble concluding that his claim "is not cognizable under § 1983." *Heck*, 512 U.S. at 487. To hold otherwise would undermine "finality and consistency" and encourage "parallel litigation." *Id.* at 484–85 (citation omitted).

Thomas argues that *Heck* does not apply because his wrongful-commitment claim is based on the underlying "conduct" of prison officials, not on the "fact of [his] civil commitment itself." He reasons that, because *Heck* does not apply to constitutional claims that, "if successful, would not *necessarily* imply that the . . . conviction was unlawful," *Moore v. Sims*, 200 F.3d 1170, 1172 (8th Cir. 2000) (per curiam) (quoting *Heck*, 512 U.S. at 487 n.7), his claim may proceed. His theory is that facts other than the deceptive and manipulative conduct of prison officials led to his commitment, particularly the extent of his mental illness.

But Thomas's attempt to distinguish this case from *Heck* conflicts with both his theory of the case and the description of the injury he allegedly suffered. He does not claim that encouraging him to misbehave, by itself, violated his constitutional rights or injured him. Rather, he alleges that relying on his misbehavior to *civilly commit him* is what gave rise to his cause of action. Indeed, as Thomas told the district court, his "constitutional rights were violated *because* [prison officials] obtained a civil commitment against him." (Emphasis added).

In short, Thomas's real complaint is that he never should have been committed in the first place. This has also been his central argument throughout the Iowa proceedings, and each time the Iowa courts have disagreed with him. As long as

---

*v. Cochran*, 25 P. 677, 679 (Cal. 1890) (dispensing with this requirement because, under California law, the initial judicial commitment order was "only preliminary" and "the final determination[] as to whether the person committed is insane . . . [was] to be made . . . by the resident physician of the asylum").

those judgments stand, he cannot proceed with his wrongful-commitment claim.[6] *Heck*, 512 U.S. at 486–87; *cf. Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) (explaining that the favorable-termination requirement applies even after the plaintiff has been released from custody).

## III.

Thomas also claims that forcibly medicating him violated his constitutional rights. This type of allegation is different from his wrongful-commitment claim because "requests for relief turning on [the] *circumstances* of confinement" do not necessarily affect the "*validity* of [the] confinement" itself. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (emphases added). If officials forced Thomas to take drugs having no connection to his mental illness or intentionally injured him while treating him, for example, then Thomas could have a viable damages claim under section 1983. *See, e.g.*, *Morgan v. Rabun*, 128 F.3d 694, 697–98 (8th Cir. 1997) (considering a forced-medication claim and explaining that the Due Process Clause requires this sort of treatment to be "in the [individual's] medical interest" (citation omitted)).

But here, even though the case advanced to summary judgment, Thomas never presented evidence that would have allowed a reasonable factfinder to conclude that his constitutional rights had been violated. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The record is silent about *when* or *how* the drugs were administered. And we do not even have an idea about *what kinds* of drugs he was allegedly forced to take. *Cf. Morgan*, 128 F.3d at 698 (evaluating particular "instances when [the plaintiff] was forcibly injected").

---

[6]The district court did not specify whether it dismissed Thomas's wrongful-commitment claim with or without prejudice. The appropriate disposition under *Heck* is to dismiss it without prejudice, which will allow Thomas to refile it if he can satisfy the favorable-termination requirement at some point. *See Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995) (per curiam) (modifying the dismissal of a *Heck*-barred claim "to be without prejudice").

It was Thomas's burden, as the plaintiff, to introduce evidence supporting his claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (explaining that summary judgment is proper when the party with the burden of proof "has failed to make a sufficient showing on an essential element"); Fed. R. Civ. P. 56.  Instead, he offered only threadbare allegations, including that he was "medicated . . . for the wrong reasons."  But this does not tell us what, when, where, why, or how drugs were administered.  *Cf. Morgan*, 128 F.3d at 697–98 (reviewing specific details in the record).  So even though no one argues that we should affirm on this particular ground, we still think that Thomas's lack of proof dooms his forced-medication claim.  *See Hohn v. BNSF Ry. Co.*, 707 F.3d 995, 1000 (8th Cir. 2013) (explaining that we "may affirm [summary] judgment on any basis supported by the record").

IV.

We accordingly affirm the grant of summary judgment, except that we clarify that the dismissal of Thomas's wrongful-commitment claim is without prejudice.

LOKEN, Circuit Judge, concurs in the result.

_____