In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-1757

TIMOTHY BELL,

*Plaintiff-Appellant,*

*v.*

KWAME RAOUL AND GLENN J. ALEXANDER,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-06780 — **Thomas M. Durkin**, *Judge.*

SUBMITTED OCTOBER 24, 2023 — DECIDED DECEMBER 20, 2023

Before HAMILTON, SCUDDER, and LEE, *Circuit Judges.*

PER CURIAM. After serving a sentence for sexual assault, Timothy Bell remained incarcerated in an Illinois prison for over 16 years under the state's Sexually Violent Persons Commitment Act. In 2022, Bell invoked 42 U.S.C. § 1983 and sued two state officials, alleging that the duration of his civil commitment exceeded that permitted by the Act. The district court concluded that the Supreme Court's 1994 decision in *Heck v. Humphrey* barred Bell's claims. We agree and affirm.

**I**

A jury civilly committed Bell after he served just under half of an eight-year criminal sentence imposed in 2002 following a conviction for sexual assault. Twenty years later, Bell petitioned the state court for release under the procedures enumerated in the Sexually Violent Persons Act (often shorthanded as the SVPCA), insisting that the statute capped the duration of his civil commitment at 15 years. The state disagreed and continued Bell's detention as a sexually violent person. Over his years of civil commitment, Bell also brought multiple petitions for habeas corpus relief in federal court, none of which succeeded.

In 2022, Bell turned to 42 U.S.C. § 1983 and sued the Illinois Attorney General and the assistant attorney general who conducted the commitment proceedings, contending that they had violated his constitutional rights by detaining him without a basis in Illinois's law. Bell sought not only money damages from both officials, but also injunctive relief terminating his participation in the state's civil commitment program.

Adhering to the screening obligations imposed by 28 U.S.C. § 1915(e)(2)(B), the district court concluded that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred Bell's claim. The district court therefore dismissed the complaint, entered judgment, and later denied Bell's motion for reconsideration.

Bell now appeals, primarily challenging the applicability of *Heck* to his claim. He has also submitted a renewed motion for the appointment of counsel, using that filing to inform us he has been released from civil detention to home confinement.

**II**

We have no published decisions in which we have applied the *Heck* doctrine to civil detainees such as those incarcerated in Illinois as sexually violent persons, though we have done so a handful of times in nonprecedential dispositions. See, *e.g.*, *Henderson v. Bryant*, 606 F. App'x 301, 304 (7th Cir. 2015). Today, in accordance with every other circuit that has considered this issue, we too apply *Heck* to those civilly confined under the Illinois SVPCA and similar statutes. Like a prisoner wishing to challenge a criminal conviction or sentence, a civil detainee cannot sue a state official under 42 U.S.C. § 1983 for violating his constitutional rights when a judgment in the plaintiff's favor would necessarily imply the invalidity of his confinement, unless the grounds for the confinement have already been set aside in other proceedings.

A

In *Heck*, the Supreme Court held that § 1983 cannot be used to contest the fact or duration of confinement, whether directly or by implication, unless the conviction or disciplinary sanction that led to the confinement is invalidated on appeal, through a collateral attack, or by executive pardon or clemency. See 512 U.S. at 486–87. In this way, *Heck* imposed a favorable-termination requirement. See *id.* at 484. Our cases are clear that the requirement applies regardless of whether the plaintiff seeks damages or injunctive relief: "If the claim has not accrued, it cannot matter what relief a prisoner seeks." *Haywood v. Hathaway*, 842 F.3d 1026, 1028 (7th Cir. 2016) (applying *Heck* and rejecting the argument that waiving any relief but damages allows a § 1983 claim to proceed).

To be sure, *Heck* did not announce a jurisdictional rule, but instead more of an affirmative defense that can be waived by an opposing party or sidestepped by a district court if it wishes to reach the merits of a claim. *Polzin v. Gage*, 636 F.3d 834, 837–38 (7th Cir. 2011) (reaching the merits of a § 1983 claim despite recognizing that it was barred by *Heck*); *Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999) (concluding that the state had waived a *Heck* defense by failing to assert it).

*Heck* identified multiple policy concerns underpinning its favorable-termination requirement. Among other reasons, the requirement aims to foreclose (or at least limit) the possibility of parallel litigation in state and federal courts by preserving habeas corpus as the sole remedy for state prisoners wishing to challenge a conviction or sentence. See *Heck*, 512 U.S. at 484. In more recent years, the Supreme Court has reiterated these concerns, emphasizing that § 1983 should not be used to pursue collateral attacks on state court criminal judgments, undermine the finality of those judgments, or circumvent the limitations on post-conviction relief Congress included within 28 U.S.C. § 2254(a) and accompanying provisions. See *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019).

B

By no means are we alone in holding that *Heck*'s reasoning applies to challenges to state-law based civil commitments like the one imposed on Timothy Bell. Indeed, if we consider unpublished decisions, five circuits have reached that exact conclusion. See *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1140–41 (9th Cir. 2005) (applying *Heck* to California's Sexually Violent Predators Act to preserve habeas corpus as the sole remedy for persons in custody); *Thomas v. Eschen*, 928 F.3d 709, 711 (8th Cir. 2019) (applying *Heck* for similar reasons); *Banda*

*v. New Jersey*, 134 F. App'x 529, 530 (3d Cir. 2005) (same); *Whitehead v. Bush*, 62 F. App'x 912, 913 (10th Cir. 2003) (same); *Fetzer v. Secretary, Fla. Dep't of Children & Families*, No. 20-11139-E, 2020 WL 5625172 at *1 (11th Cir. Aug. 13, 2020) (same). Our research shows no circuit adopting a contrary position.

Bell's § 1983 claim squarely challenges the validity of his continued civil commitment pursuant to Illinois law. His complaint seeks money damages and an injunction, yet entitlement to either remedy would necessarily require him to prove in the first instance the illegality of his civil commitment. Therein lies the *Heck* barrier: Bell cannot use § 1983 to pursue those remedies unless and until he succeeds through a different outlet in favorably terminating or otherwise showing the invalidity of his civil commitment under the SVPCA.

The principles underpinning *Heck* are front and center in these circumstances. Recall that Bell has already attempted to challenge his ongoing civil commitment through multiple habeas petitions filed in federal court. See, *e.g.*, *Bell v. Donovan*, No. 22-CV-4135 (N.D. Ill. 2022). None has succeeded. A parallel civil suit would trigger the same considerations and concerns that *Heck* sought to avoid, including respect for federal-state comity and the preservation of habeas corpus as the sole avenue of relief for a state prisoner seeking post-conviction relief. Those concerns ring true regardless of whether the individual claiming relief under § 1983 is civilly committed or criminally imprisoned. We see no way to avoid the conclusion that *Heck* applies to Bell's claim.

Nor does it matter that Bell is no longer confined within the Rushville Treatment and Detention Facility. He remains in the state's SVPCA program despite recently being released

to home confinement—a form of state custody. See 725 ILCS 207/40(b)(4) (2014) ("An order for conditional release places the person in the custody and control of the [Human Services] Department."). His release from Rushville does not modify our conclusion or otherwise moot the issue presented by Bell's appeal. See *United States v. Trotter*, 270 F.3d 1150, 1152–53 (7th Cir. 2001) (concluding that an appeal of a sentence was still live even though the defendant had been released from prison and was serving supervised release).

Indeed, our conclusion extends further. The *Heck* bar applies after a detainee's release until the judgment that caused the detention is invalidated. See *Savory v. Cannon*, 947 F.3d 409, 419 (7th Cir. 2020) (en banc) (holding that a defendant's § 1983 claim accrued only when he obtained a pardon, not when he was released from prison). Bell must therefore wait until he receives a favorable termination of his civil commitment before seeking relief under § 1983 for his allegedly excessively long confinement.

C

Do not read us to be saying that Timothy Bell has no way to challenge the length of his civil commitment or the way the state is running its program. Illinois law offers outlets for those who have been civilly committed, as the Fourteenth Amendment requires. See *Howe v. Hughes*, 74 F.4th 849, 852 (7th Cir. 2023) (acknowledging that civil confinement constitutes a significant restriction of liberty and thus committed individuals require due process protections). Under state law, officials must periodically reexamine Bell to determine his continued eligibility for civil commitment. See 725 ILCS 207/55; *Gilbert v. McCulloch*, 776 F.3d 487, 497 n.5 (7th Cir. 2015). Bell has a state-law right to counsel at these revaluation

proceedings, and so too are avenues available for him to challenge adverse determinations. First, the Secretary of the Department of Human Services can determine that the committed person is no longer sexually violent and is thus authorized to petition for discharge. 725 ILCS 207/65; *In re Detention of Samuelson*, 727 N.E.2d 228, 233–34 (Ill. 2000). Second, the committed person can petition for discharge at one of the statutorily mandated periodic hearings, over the Secretary's objection. *Id.* Third, the committed person can petition for discharge outside of the periodic reviews without approval of the Secretary. *Id.* If the state circuit court rejects the petition, the petitioner can appeal, potentially all the way to the state Supreme Court. See *In re Detention of Hardin*, 932 N.E.2d 1016, 1020 (Ill. 2010).

Bell has taken advantage of these state-law avenues for relief several times, but each time has failed to appeal adverse rulings. If he did bring his claim through the state's full appeal process, he would have exhausted state remedies and could then attempt to pursue relief under 28 U.S.C. § 2254(b)(1)(A). Those appeals would be sufficient to give the state courts adequate chances to hear his claim first, and so he would not be required to first apply for a writ of habeas corpus from state courts as well. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Alternatively, Bell may be able to use the Illinois habeas statute for relief. This statute permits filing an application for a writ of habeas corpus where, as here, the applicant alleges being held in custody for longer than is legally permitted. See 735 ILCS 5/10-123(2); *Barney v. Prisoner Review Bd.*, 184 Ill.2d 428, 431 (1998). We express no opinion on Bell's chances of

success in using these alternate remedies. Our only point is to observe their existence.

For these reasons, we AFFIRM the district court's judgment dismissing Bell's § 1983 claim and DENY his renewed motion for recruitment of counsel.